UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>ARTHUR JESS ESPINOZA,<br><br>        Defendant. | Case Nos. 4:21-cr-00286-DCN<br>              4:20-cr-00230-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Rule 32 of the Federal Rules of Criminal Procedures governs sentencing. Subsection (b)(1) of that rule states that the Court must impose sentencing without unnecessary delay. However, Subsection (b)(2) states that the Court may, for good cause, change any time limits prescribed in the rule. In this case, sentencing was set for October 13, 2022. Probation timely and appropriately submitted a Presentence Report that met the requirements of Rule 32 and the defense filed objections, particularly one relating to the leadership or organizer enhancement under the United States Sentencing Guidelines. At the sentencing, during oral argument on that objection, the Government asked for a short recess to see about calling a witness to discuss the facts underlying the leadership enhancement. The Court decided, exercising its discretion, to recess sentencing to allow the Court to further research the issue and to issue a preliminary memorandum explaining its position. The Court also stated on the record that both parties would have the opportunity

to respond to the Court's written memorandum and to decide if witnesses were appropriate or necessary. This is the Court's preliminary memorandum.

## II. LEGAL STANDARD

In calculating the guideline sentencing range, probation included a two-level enhancement for leadership or organizer pursuant to US Sentencing Guideline § 3B1.1(c). Defendant objected to the enhancement, arguing in his brief that the Government failed to meet its burden of proof on the issue of leader or organizer. The decision on this objection is critical because with the enhancement the Defendant does not qualify for the statutory safety valve under *Lopez*.[1] Without the statutory safety valve, the mandatory minimum of 120 months remains in force.

> USSG § 3B1.1 states:
>
> Based on the defendant's role in the offense, increase the offense level as follows:
> (a) . . .
> (b) . . .
> (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

Subsections (a) and (b) involve situations where there are 5 or more participants or where the criminal activity was otherwise extensive. No one argues that (a) or (b) apply to the facts of this case so they will not be discussed herein. The Commentary to § 3B1.1, at Application Notes 2, states that "to qualify for an adjustment under this section, the

---

[1] The safety-valve provision allows a district court to sentence a criminal defendant below the mandatory-minimum sentence for particular drug offenses if a defendant meets the five subsections in § 3553(f). U.S. v. Lopez, 998 F.3d 431, 435 (9th Cir. 2021). One of the subsections is that the defendant was not an organizer, leader, . . . of others in the offense.

MEMORANDUM DECISION AND ORDER - 2

defendant must have been the organizer, leader, manager, or supervisor of one or more other participants."

The Ninth Circuit has issued several decisions on the leadership enhancement. These cases make the rules regarding the enhancement fairly clear. A court may impose this enhancement if there is evidence that the defendant exercised some control over others involved in the commission of the offense or was responsible for organizing others for the purpose of carrying out the crime. *U.S. v. Pimentel-Lopez*, 859 F.3d 1134, 1143 (9th Cir. 2016) (quoting *U.S. v. Whitney*, 673 F.3d 965, 975 (9th Cir. 2012). Of course, having an important role in an offense is not enough unless there is also a showing that the defendant had control over others. *Id.*

The Ninth Circuit recently held in an appeal from the District of Idaho that "the practical dimensions of what it means to exercise 'control over others' are well illustrated by *United States v. Avila*." *U.S. v. Harris,* 999 F.3d 1233 (9th Cir. 2021). Avila was the sole go-between for a buyer and a seller in a drug sale. Even though he obtained and mailed the cocaine, was the only person who met with the undercover officer, and received armed assistance from co-conspirators, the Ninth Circuit held that the enhancement did not apply because he did not exercise "control over others." *Id.*

It is not necessary for the Court to make specific findings of fact to justify the imposition of the role enhancement. *U.S. v. Whitney*, 673 F.3d 965, 975 (9th Cir. 2012). However, there must be sufficient evidence in the record to support the conclusion that the defendant exercised the necessary level of control. *Id.* A district court's application of the Guidelines to the facts of a case is reviewed for abuse of discretion, while its underlying

factual findings are reviewed for clear error. *U.S. v. Diaz-Lozano,* 736 Fed.Appx 687 (9th Cir. 2018).

No co-conspirator testified at sentencing or even gave a statement to police or probation that defendant was a supervisor or leader. There are only inferences in the record. This Court must decide if those inferences show that defendant was a go-between or a leader.

   a. <u>Case No. 20-CR-230</u>

On August 20, 2020, during a traffic stop, law enforcement found defendant possessed heroin and methamphetamine in large amounts. Defendant told the arresting officer that he planned to take the methamphetamine to the Fort Hall Casino to meet up with a friend and then together go to Pocatello, Idaho, with the methamphetamine. A grand jury indicted defendant on these facts on October 15, 2020, in Case No. 20-CR-230. There is almost no evidence in this case other than the fact that defendant was arrested in possession of drugs and said he was going to meet someone and take the drugs to Pocatello. He was not a leader in that case and the enhancement does not apply.

   b. <u>Case No. 21-CR-286</u>

Almost a year later, on September 13, 2021, a confidential informant ("CI") told law enforcement that the defendant was willing to distribute methamphetamine to the CI. Law enforcement reviewed Facebook messages showing defendant tried for several weeks to get the CI to "move" controlled substances. Law enforcement ("LE") established a post office box and told defendant (through the CI) to mail 4 ounces of methamphetamine to the P.O. Box in exchange for $300. This dollar amount was substantially less than what the

MEMORANDUM DECISION AND ORDER - 4

defendant told the CI he charges.[2] The defendant mailed 111.81 grams of methamphetamine to the P.O. Box.[3] What happened after this sale is quoted verbatim from the Presentence Report:

21. On September 21, 2021, the LE communicated via text with the defendant and advised he had the required $1,050 and wanted to know when he could expect "the other package." The defendant called the LE and told him he would contact him once he knew to whom the LE should send the money. The defendant instructed the LE to wire the money to Perlita Sanchez Smith in California. The defendant changed the plan and told the LE to wire the money to Fernando Priante Bravo in Mexico City, but after further communication, agreed to the original plan of wiring the money to Perlita Sanchez Smith, and the defendant would then wire money to Mexico. While awaiting the wire transfer, the defendant sent text communication to the LE regarding the need to hurry, "cause thes [sic] girls are gonna be mad if I have them waiting all day." The LE executed the wire transfer as arranged. The defendant reported the same person would ship the methamphetamine to the LE, "The girl that sent the last one I told her rush delivery. I don't know why it took so long."

22. After the wire transfer, the LE asked about the shipment. The defendant responded, "Bro my dudes in Mexico. I sent that money to him so he can get a plane ticket. He'll be back tomorrow and ill get my re up. I'll send it ASAP. I'll send the tracking number soon as I send it." The LE communicated his needs as he had people waiting. The defendant responded, "I know bro. I'll get it to u soon as I can. An from now on I'll put shit to the side for you. I re up about every week and a half. I'm gonna grab 2 for you every re up. If u start doing more I'll just adjust."

23. On September 23, 2021, the LE and defendant continued their text communication. The defendant related, "Ya Bro my dudes getting back from Mexico today. Everything gonna b good. Im probably gonna send more than just the ^ cause I know it's gonna go quick." The defendant further related he would send the product the "fastest I can. I'll pay the quickest way."

---

[2] The defendant told the CI he charged $3,200 for one pound of methamphetamine. There are 16 ounces in a pound. ¼ pound would be 4 ounces. Thus, ¼ pound would cost $800, not $300.

[3] 111.81 grams is 3.94 ounces and is just under 4 ounces.

MEMORANDUM DECISION AND ORDER - 5

In an interview after his 2021 arrest, defendant told police that his suppliers were two brothers, Fernando and Juan David Mendez Trujillo. He also told police how the Trujillos got their methamphetamine across the border from Mexico.

Based on these facts, Probation gave defendant an enhancement under 3B1.1(c) for leadership.[4] Defendant objects to that enhancement. He argues that at best the evidence indicates he facilitated the distribution of drugs but did not exercise control over anyone. Probation and the Government believe that the facts include multiple instances where defendant instructed others in drug trafficking activities. Specifically, the Report points out that defendant used a friend's girlfriend to mail drugs to a CI and instructed a UC to wire money to Mark Wilson for another drug transaction. He spoke of "my dude" being in Mexico and that the guy needed the drug money for airfare. He gave the UC a different name to wire additional money for more drugs and told the UC to hurry because the girls will be mad if they have to wait all day. These facts show defendant gave instructions but none of these facts indicate control.

In *U.S. v. Avila*, 95 F.3d 887 (9th Cir. 1996), the Ninth Circuit stated:

> Avila does not dispute the fact that he was the go-between for the buyer and the seller, that he obtained and mailed samples of cocaine, that he negotiated a $1,000 personal fee for each kilogram of cocaine, that he was the only person to meet with the undercover officer, or that he accepted armed assistance. He contends, however, that these facts "do not demonstrate any organizational or leadership role o[ver] others in the conspiracy." The government, relying on *United States v. Varela*, 993 F.2d 686 (9th Cir.), cert. denied, 510 U.S. 884, 114 S.Ct. 232, 126 L.Ed.2d 186 (1993), and *United States v. Barnes*, 993 F.2d 680 (9th Cir.1993), cert. denied, 513 U.S. 827, 115 S.Ct. 96, 130 L.Ed.2d 46 (1994), contends that Avila was an organizer

---

[4] Specifically, para. 37 of the Presentence Report states, "The defendant acted as a leader or supervisor over those who received wire transfers associated with his drug distribution activities and shipped methamphetamine on his behalf."

> or leader because he "organized the actions of his co-defendants in delivering the drugs." We agree with Avila.
>
> The cases in which this court has upheld a four-level upward adjustment support Avila's contention that the finding that he was an organizer or leader is clearly erroneous. Those cases involved defendants who, the evidence showed, exercised some degree of control or organizational authority over others. See *Ponce*, 51 F.3d at 827; *United States v. Roberts*, 5 F.3d 365, 371 (9th Cir.1993); *Barnes*, 993 F.2d at 685; *United States v. Mullins*, 992 F.2d 1472, 1479 (9th Cir.), cert. denied, 510 U.S. 994, 114 S.Ct. 556, 126 L.Ed.2d 457 (1993); *United States v. Avila*, 905 F.2d 295, 298-99 (9th Cir.1990). Here, there is no evidence in the record that Avila exercised any control or organizational authority over others and thus no factual basis for characterizing him as an organizer or leader.

Then, in *U.S. v. Lopez-Sandoval*, 146 F.3d 712 (9th Cir. 1998), the Ninth Circuit ruled:

> Gonzalez's PSR does not state that he set the price for the drugs, nor does it show that Gonzalez was the person who decided the time and place for the drug transactions. At the sentencing hearing, Gonzalez testified that "[he] was told the price, the location and the time [of the drug transaction]." Therefore, the PSR only shows that Gonzalez was the defendant who relayed information about the time and location of the drug transactions and perhaps the price of the drugs. This is not enough to qualify Gonzalez as an "organizer or leader" under *Varela* and *Barnes*.

Likewise, in this case there is no evidence that defendant is the one who decided the time and place for the drug transactions. He relayed information to the CI and the UC but there is nothing to suggest that information came from him rather than from the brothers who supplied his drugs. Defendant gave the UC the name for the person receiving the cash wire but there is nothing to suggest he controlled those persons or even that they actually existed to be controlled. Calling someone "his dude" no more indicates control than calling the UC "bro". Additionally, in the first transaction, the CI sent cash that was half the amount the defendant requested. Law enforcement set the amount of drugs they would buy (4 ounces) and the price they would pay ($300).

MEMORANDUM DECISION AND ORDER - 7

The limited facts in this case are closer to the facts in *Avila, Lopez-Sandoval,* and *Harris* then they are to cases where the Ninth Circuit has upheld the leadership enhancement. Under the facts currently in the record, the leadership enhancement does not apply.

### III. CONCLUSION

Given the facts and case law outlined above, the Court concludes that the leadership enhancement would not apply in this case. However, the Court will give the parties until December 23, 2022, to file a written response or objection to this Court's decision.

### IV. ORDER

IT IS HEREBY ORDERED that:

1. The parties will have up to an including **December 23, 2022**, to file a written response or objection to this decision.

2. Sentencing remains set for **January 3, 2023, at 4:00 p.m.** at the U.S. Courthouse in Pocatello, Idaho.

DATED: December 8, 2022

_____
David C. Nye
Chief U.S. District Court Judge